UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

AIDA SANDS                                          CASE NO. 05-60422
                                                    Chapter 13
                      Debtor
--------------------------------------------------------
APPEARANCES:

ALISON A. BUKATA, ESQ.
Attorney for Debtor
221 South Warren Street
Suite 100
Syracuse, New York  13202

SHAPIRO & DI CARO, LLP                              ANNE E. MILLER-HULBERT, ESQ.
Attorneys for Washington Mutual Home Loans          Of Counsel
250 Mile Crossing Blvd.
Suite One
Rochester, New York  14624

GETNICK, LIVINGSTON, ATKINSON,                      MARY JOHNSON, ESQ.
   GIGLIOTTI & PRIORE, LLP                         Of Counsel
Attorneys for Washington Mutual Home Loans
258 Genesee Street
Utica, New York 13502

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 S. Clinton Street
Suite 203
Syracuse, New York 13202

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Under consideration by the Court is a motion filed by Aida Sands (the "Debtor") on January 28, 2005, seeking (a) an order pursuant to section 362 of the Bankruptcy Code, 11 U.S.C. § § 101-1330 ("Code"), reimposing the automatic stay against Washington Mutual Home Loans ("Washington Mutual")[1] and (b) a temporary restraining order preventing Washington Mutual from selling the Debtor's residence located at 206 Brampton Road, Syracuse, New York.

The Court heard the motion at its regular motion term in Utica, New York on March 8, 2005. Upon conclusion of the March 8th hearing, the Court reserved decision on the Debtor's two requests. The Court provided the parties an opportunity to file memoranda of law by March 31, 2005.

## JURISDICTION

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (B), and (O).

## FACTS

A foreclosure sale of the Debtor's residence was scheduled to take place on January 25, 2005, at 11:00 a.m. The Debtor's counsel, Alison Bukata ("Bukata") asserts that she completed the Debtor's Chapter 13 bankruptcy petition before the foreclosure sale time. However, Bukata needed the Debtor's payment and signature before she could electronically file the petition, and the Debtor apparently could not provide the payment or signature before

---

[1] The Debtor lists the Creditor as Washington Mutual Home Loans; however, the Creditor's counsel states that it is counsel to Washington Mutual Bank, FA, and that Washington Mutual Bank is a servicer for Mortgage Electronic Registration Systems, Inc., which held the mortgage on the Debtor's residence.

the day of the foreclosure sale because of work obligations and transportation difficulties. The Debtor was not able to get to Bukata's office until just before the 11:00 a.m. foreclosure sale. Bukata commenced the electronic petition filing at 10:49 a.m. and contacted Washington Mutual's counsel to tell them that the Debtor had arrived in her office and that she was in the process of uploading the petition onto the Court's Case Management/Electronic Case Files ("CM/ECF") system. Bukata asserts that the CM/ECF system was "excruciatingly slow" that morning and that it prevented her from completing the electronic filing until 12:05 p.m., which was the time listed in the CM/ECF system receipt. The Court's Automation Supervisor, James Fleming, reviewed the CM/ECF server's log entries from that date and confirmed that Bukata did access the Court's server at 10:49 a.m. on January 25 and that the Debtor's petition was the only file Bukata worked on for that day. By 12:05 p.m., however, the referee appointed in the state court foreclosure action had sold the property to the successful bidder, Washington Mutual.

## ARGUMENTS

The Debtor argues that the Court should not penalize her for a failure in the CM/ECF system that prevented her from timely filing her petition. The Debtor contends that commencing to electronically file a petition is equivalent to the act of physically handing the document to the bankruptcy court clerk and that prior case law has held that a petition is filed when it is put into the clerk's possession.

Washington Mutual counters by arguing that under New York law, the foreclosure sale extinguished the Debtor's mortgage and that title to the Debtor's residence passed to Washington Mutual. Washington Mutual asserts that the petition cannot stay the foreclosure

4

sale because the Court did not receive the petition until the Debtor had scanned in all the papers, paid the filing fee and the Court issued a receipt at 12:05 p.m., which was after the foreclosure sale had taken place.

**DISCUSSION**

Code § 362(a) creates an "automatic stay" against creditor collection actions upon the filing of a bankruptcy petition. To implement the stay, a debtor need only file a bankruptcy petition. Therefore, if the Debtor filed her petition before the foreclosure sale was completed, the foreclosure sale would be void *ab initio*. *See In re Braught*, 307 B.R. 399, 401 (Bankr. S.D.N.Y. 2004); *In re Capgro Leasing Assocs.*, 169 B.R. 305, 313-14 (Bankr. E.D.N.Y. 1994). Washington Mutual would then have to move for relief from the Code § 362(a) stay in order to continue with the foreclosure. If the Debtor filed her petition after the foreclosure sale was complete, the Debtor's residence would not be property of the estate within the meaning of Code § 541 and would not be subject to the automatic stay. *See 11 U.S.C. § 1322(c)(1)*. Bankruptcy courts have uniformly held that, under New York mortgage foreclosure law, a debtor's right of redemption of, and interest in, the property is extinguished by a foreclosure auction, not by the subsequent delivery of the deed. *In re Rodgers*, 333 F.3d 64, 67 (2d Cir. 2003) (*citing In re Mizuno*, 288 B.R. 45, 49 (Bankr. E.D.N.Y.2002); *In re Cretella*, 42 B.R. 526, 532 (Bankr. E.D.N.Y.1984); *In re Ghosh*, 38 B.R. 600, 602 (Bankr. E.D.N.Y.1984); *In re Butchman*, 4 B.R. 379, 380 (Bankr. S.D.N.Y.1980)). The question for this Court is thus straightforward: when a debtor files a bankruptcy petition electronically, at what point in the filing process should the Court conclude that the debtor has actually filed the petition and commenced the bankruptcy case?

5

Pursuant to Federal Rule of Civil Procedure 83 ("Fed. R. Civ. P.") and Federal Rules of Bankruptcy Procedure 5005(a)(2), 9011, and 9029 ("Fed. R. Bank. P."), the Judges for the United States Bankruptcy Court for the Northern District of New York issued an administrative order requiring all petitions, pleadings, motions, and other documents filed on or after July 1, 2004, be filed electronically. *Administrative Order No. 03-01*, *In re: Electronic Filing* (Bankr. N.D.N.Y. Nov. 11, 2003).

The Court's CM/ECF system allows attorneys to file documents directly with the Court over the Internet. The filing process occurs as follows: filers prepare a document using word processing software and then save it as a Portable Document Format (PDF) file. After logging on to the Court's website with a Court-issued password, filers enter basic information about the case and the document they are filing, and attach the document. The final screen the filers see before they submit the document is a screen that warns "Attention!! Submitting this screen commits this transaction. You will have no further opportunity to modify this submission if you continue." When the filers click on the "next" tab, they submit their document to the Court. The bankruptcy clerk's office neither has possession of the electronically filed document nor does the office record any of the filers' information until the filers press the "next" tab. Once the document is submitted, the CM/ECF system records the information and automatically generates a "Notice of Electronic Filing," which verifies the system's receipt of the filed document(s). The Notice of Electronic Filing certifies that the filing is now an official Court document. It provides the time of filing, which is not the time the CM/ECF system generates the Notice, but the time when the filers press the "next" tab on the warning screen and the Court's CM/ECF server receives the transmission. The Notice also

provides the name of the party and attorney filing the document, the type of document, the text of the docket entry, and an electronic link to the filed document. The system then sends an e-mail containing the Notice of Electronic Filing to the filers, as well as to all parties in interest in the case who have previously filed a document in the case (when a bankruptcy petition is filed only the debtor's counsel receives the Notice of Electronic Filing). In this case, the Notice of Electronic Filing provides that Bukata filed a bankruptcy petition for Aida Sands at 12:05 p.m. on January 25, 2005. The system sent an e-mail to Bukata containing this Notice. On January 25, 2005, BAE Systems Information Technology (a company contracted by the Administrative Office of the United States Courts to mail notices for the Court) then conventionally mailed the three creditors in the case, the Debtor, Bukata, the Bankruptcy Trustee, and the United States Trustee a "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines."

Under Code § 301, a debtor commences a voluntary bankruptcy case by filing a bankruptcy petition with the bankruptcy court. However, the bankruptcy court in *In re Brown* pointed out that neither the Code nor the Federal Rules of Bankruptcy Procedure explain how a bankruptcy court should determine precisely when a "filing" occurs. *See In re Brown*, 311 B.R. 721, 725 (Bankr. W.D. Pa. 2004). Electronic filing is still quite new and the bankruptcy courts that in the past have ruled on this issue have dealt with paper petitions. Most courts have ruled that a bankruptcy petition is filed for purposes of Code § 301 when it is first placed in the actual or constructive possession of the clerk of the bankruptcy court. *See National Westminster Bank v. Markings Assocs.*, No. CIV. 92-3079, 1992 WL 281158 (D. N.J. Sept. 21, 1992) (holding that bankruptcy petition was filed when debtor placed the petition in the

clerk's possession, even though the debtor did not provide the correct $500 filing fee and the clerk time-stamped the petition as "filed" only when the debtor returned with the $500); *Wood v. Godfrey* (*In re Godfrey*), 102 B.R. 769, 771 (B.A.P. 9th Cir. 1989) (holding that bankruptcy petition was filed when placed in bankruptcy clerk's possession, rather than when stamped "filed"); *Brown*, 311 B.R. at 725 (holding that if the time of the constructive filing and the time of the formal filing are different, the time of the constructive filing is dispositive in determining when a bankruptcy filing has occurred); *In re Domaleczny*, 142 B.R. 287, 298 (Bankr. N.D. Ill.1992) (holding that debtors filed their petition when they placed the petition in the clerk's custody and the debtors were ready and able to pay the filing fee). The time and date stamped on a bankruptcy petition gives rise to a presumption that the debtor filed the petition at the time the clerk dates and time stamps the petition. *In re Godfrey*, 102 B.R. at 771. A debtor can rebut the presumption by establishing that the debtor earlier presented the petition to the clerk's office in an acceptable filing form, and that a representative of that office received the petition. *In re Schleier*, 290 B.R. 45, 50 (Bankr. S.D.N.Y. 2003). Not all courts agreed with this position, however. In *Matter of McMeans*, an Alaska bankruptcy court held that for purposes of determining commencement of a Chapter 11 case, a bankruptcy petition was filed when it was stamped "filed" by a bankruptcy clerk, and not upon its transmission to the clerk's office by facsimile. *Matter of McMeans*, 209 B.R. 253, 256 (Bankr. N.D. Ala. 1997).

Similar to Code § 301, Fed. R. Civ. P. 3 states that a civil action is commenced by filing a complaint with the court. This Court agrees with the Pennsylvania bankruptcy court in *In re Brown* and holds that the standard for determining when a complaint in a civil action is

filed also applies to determining when a bankruptcy petition is filed. *See In re Brown*, 311 B.R. at 728. Federal circuit courts have held that a complaint in a civil action is filed when it is first placed in the clerk's custody. *See, e.g., McClellon v. Lone Star State Gas Co.*, 66 F.3d 98, 101 (5th Cir. 1995); *In re Toler*, 999 F.2d 140, 142 (6th Cir. 1993); *Gilardi v. Schroeder*, 833 F.2d 1226, 1233 (7th Cir. 1987); *Cintron v. Union Pacific R.R. Co.*, 818 F.2d 917, 920 (9th Cir. 1987).

In *Berman v. Congressional Towes LP - Section 1*, a U.S. District Court for District of Maryland confronted the issue of when an electronic filing should be deemed filed. In that case, the defendant argued that the plaintiff's motion for the court to reconsider a previous order was untimely. The plaintiff's counsel logged on to the court's filing system at 11:47:33 p.m. on February 17, 2004, but the motion was not entered until 12:06:49 a.m. the next day. The court stated that:

> A document is "filed" at the time the Notice of Electronic Filing states it was entered. Thus if you begin the process of electronically filing a document on December 20th at 11:55 p.m. and do not complete it until December 21st at 12:05 a.m., the Notice of Electronic Filing will state that document was entered on December 21, 2002 at 12:05 and this will be the date the document was filed.

325 F.Supp.2d 590, 592 (D. Md. 2004).

This Court concludes that the Notice of Electronic Filing creates a rebuttable presumption that a debtor files a petition at the time the Notice states it was entered. If debtor's counsel could not submit a petition because the CM/ECF system experienced technical difficulties, counsel could submit proof that the problems at the clerk's office prevented the filing of the petition. Debtors' counsel should call the clerk's office when this

9

happens. Counsel should speak with a representative of the clerk's office and ask the representative to confirm that the CM/ECF system is not accessible or otherwise delayed, and then explain to the representative why an immediate filing is necessary. The clerk's office will make suitable arrangements to accommodate the filing. Problems occurring in counsel's office, such as a poor Internet connection or a hardware problem, will not excuse a debtor's untimely filing. It is incumbent on the debtor to show that the clerk's office was subject to a CM/ECF system failure. What debtor's counsel cannot do is simply log on to the CM/ECF system and expect the Court to deem such a log on as the equivalent of filing. Commencing an electronic filing is not equivalent to the act of physically handing the document to a representative of the clerk's office. The clerk's office does not have possession of the petition until the debtor's counsel clicks the "next" tab and the Court's CM/ECF server receives the transmission. The CM/ECF system does not record any of the information until the debtor's counsel clicks this tab. Logging on is not enough. Otherwise, debtors' counsel could simply log on to the system and then go about the process of filling out the petition at his leisure. The Court does not want to encourage this practice.

  Here, the Debtor has not provided any evidence that there was a technical problem in the Clerk's office. The Debtor's counsel never called the Clerk's office when she experienced her alleged filing difficulties. All that is known to the Court is that the Debtor's counsel logged on to the CM/ECF system eleven minutes before the scheduled foreclosure sale. The petition was not in the Bankruptcy Clerk's possession at the time of the foreclosure sale. The sale therefore took place before the Debtor filed her bankruptcy petition. Thus, the Debtor's residence was not property of the estate within the meaning of Code § 541 and is not subject

10

to the automatic stay pursuant to Code § 1322(c)(1). For these reasons, the Court denies the Debtor's motion to impose the automatic stay against Washington Mutual and to impose a temporary restraining order preventing Washington Mutual from selling the Debtor's residence.

    IT IS SO ORDERED.

Dated at Utica, New York

this 26th day of May 2005

                                              /s/
                                              STEPHEN D. GERLING
                                            Chief U.S. Bankruptcy Judge